NO. 07-07-0026-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 20, 2008

_____

MARIO ODILON REYNA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 64TH DISTRICT COURT OF HALE COUNTY;

NO. A16870-0607; HONORABLE ROBERT W. KINKAID, JR., JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Mario Odilon Reyna, was convicted by a jury of driving while intoxicated, third or more, and punishment was assessed at ninety years confinement. By two issues, Appellant maintains (1) the trial court erred in denying his motion for mistrial because a juror withheld her knowledge of Appellant's family and her husband's former relationship

to Appellant's family, and (2) the trial court erred in denying his motion to suppress. We affirm.

**Background Facts**

On May 6, 2006, at approximately 9:30 p.m., Trooper Benito Gonzales was transporting a prisoner to the Hale County Jail. He was traveling north along an "S" curve on FM 789 when he observed a van blocking the "Y" intersection of FM 789 and County Road 175. The van was parked on the west side of FM 789 directly in front of the county road. Gonzales made a U-turn to determine if the van was disabled and in need of assistance. He pulled up behind the van and activated the "take-down" lights on his patrol car to illuminate the dark area. Before he could exit the vehicle, the van moved forward about six to ten feet before coming to a stop beyond the intersection. Trooper Gonzales approached the van and noticed Appellant in the driver's seat hunched over and not moving. He requested that Appellant show his hands.

When Appellant rolled down his window, Gonzales detected a strong odor of alcohol and other indications of intoxication. When questioned, Appellant responded that he had consumed only one alcoholic beverage. Gonzales observed an open alcoholic beverage in the cup holder of the van and asked Appellant if he could open the passenger door to check for occupants or weapons. Proceeding with Appellant's permission, he opened the passenger side door and noticed a small cooler between the driver's and passenger's seats and opened it to reveal more alcoholic beverages. Pursuant to Gonzales's request,

2

Appellant exited the van at which time Gonzales noticed a bottle of tequila in the driver's seat. According to Gonzales's testimony and offense report, Appellant was confused and disoriented and claimed he had stopped to take a nap and "wee wee."

Trooper Gonzales performed the horizontal gaze nystagmus field sobriety test and observed all six clues indicating Appellant was intoxicated. Appellant was uncooperative and verbally abusive and refused to participate in other field sobriety tests. He was arrested for driving while intoxicated and transported to the Hale County Jail with the other prisoner in the trooper's patrol car.

We will address Appellant's issues in a logical rather than sequential order. Thus, we first address his contention that the trial court abused its discretion in denying his motion to suppress.

**Motion to Suppress**

Appellant filed a motion to suppress alleging that Trooper Gonzales had no reasonable suspicion to detain him and further alleged that the community caretaking exception to the warrant requirement of the Fourth Amendment did not support the trooper's actions. At the suppression hearing, Gonzales was the only witness to testify for the State. The substance of Gonzales's testimony was that he believed the van was disabled and blocking an intersection. He interrupted the transfer of his prisoner to stop and check on the situation.

3

The defense called Heath Bozeman, a transportation engineer with the Texas Department of Transportation, in an effort to establish that Appellant was not blocking the intersection. The defense argued that Appellant was parked on the shoulder of FM 789 and not blocking the intersection. The defense also asserted there was no evidence to suggest that Gonzales was engaging in his community caretaking duties.

Pursuant to *State v. Cullen*, 195 S.W.3d 696, 699-700 (Tex.Crim.App. 2006), Appellant requested, and the trial court made, findings of fact and conclusions of law. As relevant here, the trial court made the following findings of fact:

> 3. while traveling on Texas FM 789 Trooper Gonzales observed a blue passenger van parked in the intersection of Texas FM 789 and County Road 175;
>
> * * *
>
> 5. Trooper Gonzales observed the blue passenger van to be blocking the intersection of Texas FM 789 and County Road 175; and
>
> 6. the blue passenger van was parked in a position in the intersection where vehicles entering County Road 175 from FM 789 or exiting County Road 175 into FM 789 would collide with the blue passenger van.

The trial court made one conclusion of law as follows:

> [t]he defendant was lawfully stopped by Trooper Gonzales because the defendant violated Texas Transportation Code Section 545.302. Section 545.302 states that an operator may not stop, stand, or park a vehicle in an intersection. The blue van operated by the defendant was parked in the intersection of Texas FM 789 and County Road 175 when observed by Trooper Gonzales. The location of the van, where parked, would have caused vehicles entering or exiting the two roadways through the intersection to collide with the van.

4

### I. Standard of Review

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). In determining whether the trial court abused its discretion we accord almost total deference to a trial court's determination of the historical facts especially if those determinations turn on witnesses' credibility and demeanor. *Neal v. State*, No. AP-75406, 2008 WL 2437667, at *11 (Tex.Crim.App. June 18, 2008). We review the court's application of the law to the facts de novo. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App 2007); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex.Crim.App. 1997). We do not engage in our own factual review; rather, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). Where, as here, the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *See State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex.Crim.App. 2006). The decision of the trial court will be sustained if it is correct on any theory of law applicable to the facts of that case. *Ross,* 32 S.W.3d at 856.

At a hearing on a motion to suppress, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 159 S.W.3d 488, 492 (Tex.Crim.App. 2005). Once the defendant satisfies this burden by

establishing that a search or seizure occurred without a warrant, the burden shifts to the State to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Bishop v. State*, 85 S.W.3d 819, 822 (Tex.Crim.App. 2002).

## A. Traffic Violation

It is a violation of the Texas Transportation Code for an operator to stop, stand, or park a vehicle in an intersection. Tex. Transp. Code Ann. § 545.302(a)(3) (Vernon Supp. 2007). A traffic violation committed in an officer's presence authorizes an initial stop. *See Armitage v. State*, 637 S.W.2d 936, 939 (Tex. 1982). The decision to stop a vehicle is reasonable where law enforcement has probable cause to believe that a traffic violation has occurred. *Walter v. State*, 28 S.W.3d 538, 542 (Tex.Crim.App. 2000), citing *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Proof that an offense was actually committed is not a requisite of an investigative detention as long as the officer reasonably believed that a violation was in progress. *Drago v. State*, 553 S.W.2d 375, 377 (Tex.Crim.App. 1977).

## B. Discussion

The crux of Appellant's defense and one of his arguments on appeal is that the State failed to prove the existence of an intersection where his van was stopped. Appellant insists he was parked on the shoulder of FM 789. According to exhibits introduced into

6

evidence, FM 789 runs north and south and merges on the west side of an "S" curve with County Road 175 to form a "Y" intersection.[1]

Traffic engineer Bozeman testified that, as defined by the Texas Department of Transportation, an intersection is the general area where two or more roadways intersect or merge. Bozeman was not familiar with the intersection nor had he seen photographs of the location. Instead, his testimony was aided by a February 1, 1955 right-of-way map. He also pointed out to defense counsel, "I think you're trying to make the intersection as a hard-to-find area, and it is not. It's the general area."

Trooper Gonzales testified numerous times that Appellant's van was blocking the intersection of County Road 175 and FM 789. Although the van was never physically on FM 789, it nevertheless blocked the entrance to County Road 175. He further testified that he was justified in detaining Appellant because he was in violation of § 545.302(a)(3) of the Transportation Code for which a citation may issue. We conclude that Trooper Gonzales's conduct was reasonable.

It is of no consequence that Appellant's van moved forward and away from the intersection after Gonzales activated his patrol car lights. Section 545.302(a)(3) does not prescribe a minimum time the vehicle must be stopped in the intersection for the act to

---

[1]County Road 175 is a dirt road unmarked by lines, rope, or a cement curb, which is extended by a path made from vehicles that have traveled over it numerous times.

7

constitute an offense. When viewed in the light most favorable to the trial court's ruling, the findings of fact and conclusion of law are supported by the evidence.

Appellant also complains that the trial court's ruling on his motion to suppress cannot be sustained under the community caretaking exception to the warrant requirement of the Fourth Amendment because there is no evidence to support Trooper Gonzales's actions. If the trial court's ruling on a motion to suppress is correct on any theory of law applicable to the case, the decision will be sustained. *Ross*, 32 S.W.3d at 855-56. Having upheld the trial court's ruling because Appellant committed a traffic violation in Gonzales's presence thereby justifying Gonzales's actions, we need not address Appellant's community caretaking argument. We conclude the trial court did not abuse its discretion in denying Appellant's Motion to Suppress. Issue two is overruled.

**Motion for Mistrial**

By his first issue, Appellant maintains the trial court erred in denying his motion for mistrial because a juror withheld her knowledge of Appellant's family and her husband's former relationship to Appellant's family. We disagree.

**I. Standard of Review**

We review a trial court's ruling on a motion for mistrial for abuse of discretion. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007). We view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it was within the zone

8

of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004). A trial court abuses its discretion in denying a motion for mistrial only when no reasonable view of the record could support the ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007).

## A. Discussion

In the case at bar, after the receipt of the jury's verdict at the guilt/innocence stage, but prior to commencement of the punishment phase, defense counsel informed the trial court that Appellant's mother and stepfather recognized Juror Farias as an ex-relative of Appellant's family and that there had been "tremendous acrimony over child custody stuff." Appellant moved for a mistrial on that basis, whereupon the following colloquy occurred between the trial court and Juror Farias:

Court: And Ms. Farias, do you know the Defendant in this case?

Juror: No, I don't know him.

Court: And do you know if you have ever, in the past, ever been related to him or any members of his family that you know of?

Juror: I did know them, but when I looked, his parents lived across the street from me and then I realized that my husband was married to, I guess, his sister, at one time, but I don't know him.

Court: So whenever we conducted the voir dire examination you didn't know that connection, or anything like that?

Juror: I didn't know that connection until I saw his parents and then I thought, well, the name clicked, and I thought well I wonder if that's the same person, but I don't know him.

Court: And the fact that you realized, I guess, during the trial that these people sitting in the Courtroom were living across the street from you at one point in time; did that affect your ability to be fair and impartial in the case and [j]udge the evidence?

Juror: No, I don't believe it does.

Court: And it is yes or no.

Juror: No, it doesn't.

Court: It did not affect your ability in deciding the facts of this case?

Juror: No.

Thereafter the trial court ruled that, based on the evidence before it, the motion for mistrial was denied. The trial court then inquired if the parties were ready to proceed to the punishment phase. The State announced it was ready and defense counsel requested a recess to discuss what had occurred. Following a short recess, the trial proceeded to the punishment phase. Defense counsel never requested permission to question Juror Farias regarding her relationship with Appellant's family or any potential bias in that regard, nor did he object to her qualifications or further service as a juror.

The State contends that Appellant has not preserved his contention for appellate review. We agree. In *Franklin v. State*, 12 S.W.3d 473, 477 (Tex.Crim.App. 2000) (*Franklin I*), a juror revealed for the first time during trial that she knew the complainant. The trial court denied defense counsel's request to question that juror about the nature of her relationship with the victim, how long it had lasted, whether or not she could set aside any of her relationship with the victim in sitting in judgment, or whether she would tend to

10

give more or less credence to the victim's testimony and truthfulness given their relationship. The court of appeals determined that the trial court had erred in refusing to permit questioning of the juror to develop the nature of the relationship, but held that because counsel did not specifically request to make a separate bill of exception for purposes of appeal, the error was waived. Citing *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex.Crim.App. 1991), *overruled on other grounds*, 994 S.W.2d 170, 171 (Tex.Crim.App. 1999), the Court of Criminal Appeals disagreed. Noting that once the trial court was on notice of defense counsel's proposed questions, they found that the refusal to permit the request amounted to a direct order not to ask those questions. The Court then concluded that the appellant had obtained a ruling and properly preserved the complaint for review. *Franklin I*, 12 S.W.3d at 477.

In the case at bar, after the trial court ruled adversely to Appellant on his motion for mistrial, defense counsel made no effort to question Juror Farias about the nature of her relationship with Appellant's family to determine potential bias and provide a basis for appellate review. Furthermore, Appellant never sought to make a separate record as a bill of exception for appellate purposes, nor did he object to Juror Farias's continued service as a juror. Thus, we conclude under the rationale of *Franklin I*, Appellant failed to preserve the denial of his motion for mistrial for appellate review.

Assuming, arguendo, that error was preserved and that the information withheld by Juror Farias was material, we are convinced, beyond a reasonable doubt, that Appellant

11

was not denied his constitutional right to trial before an impartial jury. *See* Tex. R. App. P. 44.2(a). *See also Franklin v. State*, 138 S.W.3d 351, 354 (Tex.Crim.App. 2004) (*Franklin II*); *Sypert v. State*, 196 S.W.3d 896, 902-03 (Tex.App.–Texarkana 2006, pet. ref'd). Materiality is determined by evaluating whether the withheld information would likely reveal the juror harbored a bias or prejudice to such a degree that the juror should have been excused from jury service. *Sypert*, 196 S.W.3d at 900. Mere familiarity is not necessarily material information. *Franklin I*, 12 S.W.3d at 478, citing *Decker v. State*, 717 S.W.2d 903, 907 (Tex.Crim.App. 1983).

Juror Farias was unaware during voir dire of a potential relationship with Appellant's family. She did not know Appellant and recognized his parents only after trial had commenced. She then realized her husband had been married to Appellant's sister at one time. The trial court questioned her on her ability to be fair and impartial, to which she responded affirmatively. Additionally, where, as here, bias or prejudice was not established as a matter of law, the trial court had discretion to determine whether bias or prejudice actually existed to such a degree that Juror Farias was disqualified and should have been excused from jury service. *See Anderson v. State*, 633 S.W.2d 851, 853-54 (Tex.Crim.App. [Panel Op.] 1982). After questioning Juror Farias concerning her knowledge of or relationship to other members of Appellant's family, whether or not she could be fair and impartial, and whether her ability to decide the facts would be affected by that knowledge or former relationship, the trial court concluded that she was qualified

to continue to serve as a juror.  This, the trial court had discretion to do.  Issue one is overruled.

## Conclusion

Having overruled both of Appellant's issues, the trial court's judgment is affirmed.


Patrick A. Pirtle
Justice


Do not publish.