**B.J. FRANKLIN, Appellant,**

v.

**The STATE of Texas.**

**No. 324–99.**

Court of Criminal Appeals of Texas.

Feb. 16, 2000.

Craig L. Henry, Texarkana, for appellant.

Nicole Habersang, Asst. Dist. Atty., Texarkana, Matthew Paul, State's Atty., Austin, for State.

## OPINION

HOLLAND, J., delivered the opinion of the Court in which MEYERS, J., MANSFIELD, J., PRICE, J., and JOHNSON, J., join.

The State charged appellant, B.J. Franklin, with aggravated sexual assault of a child. *See* TEX. PENAL CODE § 22.021. Appellant pleaded not guilty to the offense. A jury convicted appellant of this offense, however, and sentenced him to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The Sixth Court of Appeals affirmed appellant's conviction. *See Franklin v. State*, 986 S.W.2d 349 (Tex.App.—Texarkana 1999). This Court granted appellant's petition for discretionary review on five grounds. We reverse the decision of the court of appeals and remand the cause to the court of appeals for a harm analysis.

### Grounds One, Two and Three

■ In the first two grounds for review, appellant claims the trial court erred in not issuing an instruction on the definition of "reasonable doubt" during the punishment stage of his trial.[1] During the punishment phase of appellant's trial, the State introduced evidence of extraneous offenses committed by appellant. The trial court did not instruct the jury on the

definition of "reasonable doubt," and appellant did not request such an instruction.

The court of appeals held the error, if any, was not preserved because appellant failed to request such language in the charge. *See Franklin*, 986 S.W.2d at 358. In *Fields v. State*, 1 S.W.3d 687 (Tex.Crim. App.1999), this Court held the "reasonable doubt" definition is not required in the punishment stage, absent a request. Op. at 687–88. Because appellant failed to request the "reasonable doubt" definition, the trial court was not required to put the definition in the charge to the jury. Accordingly, the court of appeals did not err in concluding that appellant failed to preserve error, if any. We overrule appellant's first two grounds for review.[2]

### Grounds Four and Five

In the fourth and fifth grounds for review, Appellant claims that a juror withheld material information and that he preserved error by requesting to question the juror further.[3] Appellant pleaded not guilty to the offense of aggravated sexual assault of a child, C.N.T. During voir dire, the State asked if any of the venire-members knew of C.N.T. No one in the venire mentioned that they knew C.N.T. Later in the voir dire, the State also asked the potential jurors if there was anything about their past experiences that would

---

1. The first two grounds upon which we granted review are:

   1) Does a defendant who does not request an instruction on the definition of "reasonable doubt" at punishment waive any error on appeal?

   2) Must a trial court instruct the jury on the definition of "reasonable doubt" at punishment even in the absence of a request for such an instruction?

2. We also granted discretionary review of a third ground.

   3) Is a failure to instruct on the definition of "reasonable doubt" at punishment constitutional error subject to a harm analysis under Rule 44.2(a) of the Texas Rules of Appellate Procedure?

   Based on the disposition of the first two grounds for review, it is unnecessary to review this third ground. Therefore, we dis-

miss it as improvidently granted. *See* TEX. R.APP. P. 69.3.

3. The fourth and fifth grounds for review state,

   4) Has a juror withheld material information when it is discovered for the first time during trial, that the juror was the assistant girl scout troop leader of the child victim of the sexual assault?

   5) Whether the court of appeals erred in concluding that petitioner waived error by failing to include a statement of what the anticipated testimony of a juror, who withheld information concerning her relationship with the victim, would have been, when an offer of proof was made which summarized the questions appellant would have asked the juror if allowed to inquire further.

cause them to be less than fair and impartial. Some venire-members responded to this question, but none of them mentioned knowing or knowing of the victim.

After the State's opening statement, the first witness for the State, C.N.T., came into the courtroom. Juror Spradlin then passed a note to the trial court judge stating that she knew C.N.T. Apparently, Juror Spradlin had a daughter in the same girl scout troop as C.N.T., and Juror Spradlin was that girl scout troop's assistant leader. She had not recognized the name, but knew C.N.T. when she saw her. The trial court judge asked Juror Spradlin if she could listen to the evidence in the case and base her judgment just on what she heard from the stand. Juror Spradlin stated that she could.

Appellant's attorney moved for a mistrial.

[APPELLANT]: I believe the record will reflect that the question was asked as to whether any potential jurors knew Miss [C.N.T.]. Had I known the relationship between the particular juror and the child, I would have exercised a peremptory challenge against this particular juror.

* * *

[STATE]: Judge, you've instructed her to follow the law. She has responded that she can judge this simply and strictly and solely on the response that she receives here in court, the evidence she receives here in court.

[Appellant] did have ample opportunity to develop all of this in his voir dire.
THE COURT: I think that you did, [appellant]. I'm going to permit her to remain on the jury. I think it was obvious from seeing her that she had no idea who this witness was until she saw her come into the courtroom.
[APPELLANT]: Your Honor, I would like an opportunity to conduct some followup questions with this particular juror concerning her relationship.

THE COURT: [Appellant], I'm not going to permit that because you had ample opportunity on voir dire.

Appellant objected again, stating that his due process rights were being violated. The State responded that appellant had not shown any harm, and there was no indication that Juror Spradlin would be unfair or partial.

[APPELLANT]: [T]he reason that there is no evidence of any potential biases, of course, the Court is preventing me from further developing that testimony from that particular juror once that relationship has been established. *Had I been allowed to ask questions, I would have asked questions concerning the nature of the relationship with [C.N.T.], how long it had lasted, whether or not she could set aside any of her relationship with [C.N.T.] in sitting in judgment in this particular case, or whether she would tend to give more credence or less credence to [C.N.T.]'s testimony and truthfulness due to that relationship.*

And, again, for purposes of the record, had I known of the relationship, regardless of the juror's response as to being fair and impartial, I would have exercised a peremptory strike against this particular juror due to the fact that she had such a close relationship with [C.N.T.]

* * *

THE COURT: .. I'm going to overrule any objection that you might have, I'm going to deny your motion for mistrial, and we're going to proceed.
[APPELLANT]: Note our exception, please, Your Honor.
THE COURT: Your exception's noted.
(emphasis added).

The proceedings continued, and C.N.T. testified as to how appellant sexually assaulted her. The jury found appellant guilty of aggravated sexual assault of a child and sentenced him to life in prison.

On appeal, appellant asserted that the trial court erred in denying his motion for mistrial when it was apparent that a juror had withheld material information. The court of appeals determined that "[t]he trial court erred by not developing or allowing counsel to determine the specific nature of the relationship." But it decided that appellant failed to preserve error because he did not specifically ask the court to make a separate record as a bill of exception for appeal purposes.

▮ Appellant claims the court of appeals erred in holding that he waived error. He asserts that because he requested to question Juror Spradlin and offered the questions he would have asked Juror Spradlin, error was preserved. He relies on *Koehler v. State,* 679 S.W.2d 6 (Tex. Crim.App.1984), in which this Court stated that when counsel is denied the opportunity to question a witness generally about a particular subject, he must establish what general subject matter he desired to examine the witness on during the examination. In *Koehler,* we concluded that counsel is not required to elicit specific information. Citing *Nunfio v. State,* 808 S.W.2d 482 (Tex.Crim.App.1991), appellant also contends that because the trial court was on notice of the question appellant wanted to ask and refused appellant's request to ask the question, appellant preserved error.

We first address whether appellant waived error by failing to show what testimony he would have elicited from Juror Spradlin. *Nunfio v. State*[4] presented a preservation issue similar to the instant case. In *Nunfio,* the defendant requested permission from the trial court to ask a question using a hypothetical fact situation during voir dire. *Id.* at 484. The trial court denied the request. We held that because "[t]he trial court was on notice of the question [defendant] wanted to ask, and specifically refused [defendant's] re-

quest to ask the question," error was preserved. *Id.* "Once [defendant] posed the specific question he sought to ask the venire and the judge refused to allow the question, the ruling by the trial court amounted to a direct order not to ask the question. Appellant obtained a specific ruling as to a specific question and properly preserved the issue for review." *Id.*

Like the defendant in *Nunfio,* appellant requested that the trial court allow him to question Juror Spradlin. Appellant specifically requested that he be able to ask "questions concerning the nature of the relationship with [C.N.T.], how long it had lasted, whether or not she could set aside any of her relationship with [C.N.T.] in sitting in judgment in this particular case, or whether she would tend to give more credence or less credence to [C.N.T.]'s testimony and truthfulness due to that relationship." The trial court refused appellant's request to ask the preceding questions. This ruling amounted to a direct order not to ask the questions. Therefore, appellant properly preserved the issue for review.

▮ We next address whether the information withheld from appellant by Juror Spradlin was material. "The voir dire process is designed to ensure, to the fullest extent possible, that an intelligent, alert, disinterested and impartial jury will perform the duty assigned to it." *Salazar v. State,* 562 S.W.2d 480, 482 (Tex.Crim.App. 1978). Counsel for the State and defendant have the right to question the jury to expose any interest or partiality in order to use peremptory strikes intelligently. *See Florio v. State,* 568 S.W.2d 132, 133 (Tex.Crim.App.1978); *see also* TEX. CONST. art. 1 § 10 (stating that "[i]n all criminal prosecutions the accused shall have a speedy public trial *by an impartial jury.*" (emphasis added)). Hence, when a juror withholds material information, the par-

---

**4.** Even though *Gonzales v. State,* 994 S.W.2d 170 (Tex.Crim.App.1999), partially overrules *Nunfio* by holding that an "appellate court [is] obligated to conduct a thorough analysis to determine the extent of harm before reversing the conviction," the issue of preservation discussed in *Nunfio* remains controlling law. *Id.* at 171.

ties' use of challenges and peremptory strikes is hampered. *See Salazar,* 562 S.W.2d at 482.

Application of this principle is illustrated in *Von January v. State,* 576 S.W.2d 43 (Tex.Crim.App.1978). In that case, this Court considered whether the trial court erred by failing to grant defendant a new trial when it later became apparent that a juror knew the family of the deceased victim. Juror Dunn did not respond when defense counsel asked if the venire knew the victim's family. This Court stated that "[w]hen a partial, biased, or prejudiced juror is selected without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the answers given to him on voir dire not knowing them to be inaccurate, good ground exists for a new trial." *Id.* at 45. If Juror Dunn had answered the questions correctly, the defendant could have pursued further questioning and, in all probability, Juror Dunn would not have served on the jury. *See id.* Therefore, we concluded that the trial court erred in failing to grant defendant's motion for new trial. *See id.* at 46.

*Salazar v. State,* 562 S.W.2d 480 (Tex. Crim.App.1978), also exemplifies material information being withheld from a defendant during voir dire. In that case, the defendant was charged with exposing his genitals to a young girl. *See id.* at 481. During voir dire, the defendant asked whether any of the jurors had been a witness in or involved in a criminal proceeding. Juror Wooley did not respond to this question. *See id.* After the State rested its case, Juror Wooley told the trial judge that he had been an eyewitness to a sexual assault on his own daughter, and he had testified in that prosecution. *See id.* at 482. The defendant moved for a mistrial stating that had he known the truth, he would have struck Juror Wooley either by challenge for cause or peremptorily. *See id.* The trial court denied the motion because Juror Wooley stated he could be fair

and impartial regardless of his previous experiences. *See id.*

This Court held that the trial court erred in finding Juror Wooley fair and impartial. "That a juror will state that the fact that he withheld information will not affect his verdict is not dispositive of the issue where the information is material and therefore likely to affect the juror's verdict." *Id.* Because the defendant acted in good faith on the answers given to him during voir dire, this Court concluded he was deprived of his right to peremptorily challenge Juror Wooley. *See id.* at 483.

The State argues that Juror Spradlin did not intentionally mislead appellant during voir dire; she answered the questions presented during voir dire in good faith. Appellant does not contest this argument. But the good faith of a juror is largely irrelevant when considering the materiality of information withheld. Even though Juror Spradlin did not intend to withhold material information from appellant, she was still C.N.T.'s girl scout troop leader and, at the very least, was acquainted with C.N.T. It is also true, as the State contends, that mere familiarity with a witness is not necessarily material information. *See Decker v. State,* 717 S.W.2d 903, 907 (Tex.Crim.App.1983). But in the instant case, appellant was not permitted to determine the extent of the relationship between C.N.T. and Juror Spradlin *due to no fault of his own.*

Therefore, we conclude in the instant case that because appellant acted in voir dire on the answers given to him, he was deprived of the opportunity to either challenge Juror Spradlin for cause or peremptorily strike her. Juror Spradlin informed the trial court that she could be fair and impartial to both the State and appellant, but appellant was never permitted to question Juror Spradlin concerning her relationship with the victim to determine the extent of prejudice that might have existed. Under these circumstances, we cannot conclude that Juror Spradlin's relationship with the victim was immaterial to the ap-

pellant's questioning of Juror Spradlin or appellant's use of peremptory strikes. The trial court erred in denying appellant the opportunity to ask questions of Juror Spradlin.

### Conclusion

We conclude that the information withheld from appellant by Juror Spradlin was material and that appellant properly preserved error. Therefore, we reverse the decision of the court of appeals and remand the cause to the court of appeals for a harm analysis.[5] *See* TEX.R.APP. P. 44.2.

McCORMICK, P.J., and KEASLER, J., concur in the result, KELLER, J., joins the opinion of the Court except as to grounds for review four and five in which she concurs only in the result, and WOMACK, J., concurs.

---

5. In *Gonzales v. State*, 994 S.W.2d 170, (Tex. Crim.App.1999), this Court held that "appellate courts should not automatically foreclose the application of the harmless error test to certain categories of error." *Id.* at 172. We did acknowledge, however, that certain types of errors may never be harmless or may be rarely harmless. *See id.*