**Rudolfo LOPEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–06–00655–CR.**

Court of Appeals of Texas, San Antonio.

March 19, 2008.

Rehearing Overruled April 15, 2008.

Discretionary Review Refused Oct. 1, 2008.

Richard E. Langlois, Law Offices Of Richard E. Langlois, San Antonio, TX, for Appellant.

Mary Beth Welsh Assistant Criminal District Attorney, San Antonio, TX, for Appellee.

Sitting: KAREN ANGELINI, Justice, REBECCA SIMMONS, Justice STEVEN C. HILBIG, Justice.

## OPINION

Opinion by STEVEN C. HILBIG, Justice.

Rudolfo Lopez appeals the trial court's judgment convicting him of aggravated robbery. We overrule his issues and affirm the trial court's judgment.

### BIASED JUROR

Lopez first complains the trial court abused its discretion by failing to dismiss a biased juror and grant a mistrial.

### Background Facts

After the State rested and Lopez began presenting his case, a juror notified the court he was acquainted with the complaining witness. The court conducted a hearing during which both parties questioned the juror about his knowledge of the complainant and whether such knowledge would interfere with his duty as a juror. The juror stated that although the complainant's name was given during voir dire, the juror did not "know him by his name, just by face." After seeing the complainant and hearing his testimony, the juror realized the complainant was a friend of his girlfriend's stepfather. The juror said he did not immediately recognize the complainant, and it took him awhile after hearing the complainant testify to "put everything together." The juror had seen the complainant one time at a small social gathering, two or three years before trial, and the juror's girlfriend's stepfather had mentioned the complainant was his friend. Since that time, the juror has heard the stepfather mention the complainant from time to time, but not often, and the juror never heard any mention of an assault. The juror first equivocated as to whether he would give more credence to the complainant's testimony, but then stated he would "make [his] own opinion." The juror also said that while he might feel a little uncomfortable if he found the defendant not guilty, the juror said he probably would not mention anything about the trial to his girlfriend's family. The juror also equivocated about whether his girlfriend's stepfather's relationship with the complainant would influence his decision, stating, "I don't want it to," "I think it might," and "I don't know." Nevertheless, when the judge asked the juror whether the relationship between his girlfriend's family and the complainant would affect what the juror did in the case and whether he would feel pressured to find Lopez guilty, the juror answered, "No." And in response to the court's question as to whether his knowledge of the complainant would keep the juror from being fair, the juror responded: "It shouldn't. I didn't really know him. I just saw him. I mean, I—it took me a while to recognize him, ..." At the conclusion of the hearing, Lopez requested the court to "excuse" the juror "for cause" and to declare a mistrial. The trial judge denied both requests.

### Applicable Law

■ We review the trial court's denial of a motion for mistrial under an abuse of discretion standard. *Wood v. State*, 18 S.W.3d 642, 648 (Tex.Crim.App.2000).

■ Initially, the burden is on the parties to be diligent during voir dire and ask all pertinent questions to reveal potential bias. *Gonzales v. State*, 3 S.W.3d 915, 917–18 (Tex.Crim.App.1999). When, notwithstanding the complaining party's dili-

gence during voir dire, a juror later discloses his knowledge of or relationship with a witness, the juror is considered to have withheld information during voir dire. *See, e.g., Franklin v. State*, 12 S.W.3d 473, 477 (Tex.Crim.App.2000) (*"Franklin I"*). When the withheld information is material, it is constitutional error to deny a motion for mistrial. *Franklin v. State*, 138 S.W.3d 351, 353–54, 356–57 (Tex.Crim.App. 2004) (*"Franklin II"*). When the withheld information is not material and the record does not show the appellant has been deprived of an impartial jury or denied a fair trial, the trial court's denial of a motion for mistrial is not error. *Decker v. State*, 717 S.W.2d 903, 907–08 (Tex.Crim.App.1986) (op. on reh'g).

■ "To determine materiality, we evaluate whether the withheld information would likely reveal the juror harbored a bias or prejudice to such a degree that the juror should have been excused from jury service." *Sypert v. State*, 196 S.W.3d 896, 900 (Tex.App.-Texarkana 2006, pet. ref'd). "[M]ere familiarity with a witness is not necessarily material information." *Franklin I*, 12 S.W.3d at 478. A potential juror's acquaintance with a witness is material only if the nature of the relationship reveals a potential for bias or prejudice on the part of the juror. *See id.; Decker*, 717 S.W.2d at 907. The fact the juror did not intentionally withhold the information "is largely irrelevant when considering the materiality of the information withheld." *Franklin II*, 138 S.W.3d at 355 (quoting *Franklin I*, 12 S.W.3d at 478).

### Discussion

■ The State first contends Lopez waived this point of error because he did not meet his burden to ask questions sufficient to uncover the juror's potential bias. *See Gonzales*, 3 S.W.3d at 917–18. During voir dire, Lopez asked whether anyone knew a person with the complainant's name and whether anyone knew a person with the complainant's name who might be associated with a robbery case. None of the panel members responded affirmatively. The State argues that because the complainant's name is a common one, Lopez was required to provide more detailed information, such as the complainant is confined to a wheelchair and sells merchandise on the street. We disagree. The juror who ultimately recognized the complainant testified he did not know the complainant by name and that it took "a while" after the complainant testified for him to "put it together." It would be pure speculation to hold that disclosure of those additional facts during voir dire would have caused the juror to connect the complaint's name with a friend of his girlfriend's stepfather, whom the juror had seen one time several years earlier. We hold Lopez did not fail to exercise diligence in voir dire and did not waive his complaint.

■ We next address whether the juror withheld material information, *i.e.*, whether the relationship between the juror and the complainant had a potential for demonstrating bias or prejudice on the part of the juror against Lopez. *See Decker*, 717 S.W.2d at 907; *Santacruz v. State*, 963 S.W.2d 194, 197 (Tex.App.-Amarillo 1998, pet. ref'd). In *Decker*, the Texas Court of Criminal Appeals addressed the issue of when a juror's mere acquaintance with a witness is material information in the context of voir dire. 717 S.W.2d at 907. *Decker* involved a juror who did not respond when asked in voir dire whether anyone knew the complaining witness, who was identified by name. *Id.* After the jury was sworn, one of the jurors notified the court he recognized the complainant. *Id.* The juror testified he did not know the complaining witness by name, but recognized him as a co-worker. *Id.* at 906.

They had worked together as welders on the same job site for about nine months before the trial. *Id.* The juror testified he met the complainant seven or eight times during that period, but they were not friends and had never socialized together. *Id.* The court concluded there was no showing the relationship between the juror and complaining witness had any potential for bias or prejudice on the part of the juror, and therefore the withheld information was not material. *Id.* at 907.

The facts in this case demonstrate less potential for bias than those in *Decker.* In this case, there has never been any relationship between the juror and the complainant. The juror saw the complainant only once, briefly, several years earlier, and the juror did not recognize the complainant's name and did not initially recognize him in person. The complainant is a friend of the juror's girlfriend's stepfather. The record does not demonstrate the juror's relationship with the stepfather would potentially cause the juror to be biased or prejudiced in favor of the State or against Lopez. And the juror had never heard any mention of the incident on which the charges against Lopez were based. We conclude the withheld information did not suggest any potential for bias or prejudice and was not material. *See Decker,* 717 S.W.2d at 903; *Brown v. State,* 183 S.W.3d 728, 739–40 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd).

Lopez argues the trial court nevertheless erred by failing to grant a mistrial because the record establishes the juror was biased as a matter of law. Lopez relies primarily on *Vaughn v. State,* 833 S.W.2d 180, 184 (Tex.App.-Dallas 1992, pet. ref'd), in which a juror notified the court after the jury was sworn that she knew the defendant from high school. Although the juror stated she did not know the defendant personally, had not socialized with him, and did not know his reputation in the community, she stated unequivocally that her knowledge of the defendant would preclude her from being fair and impartial. *Id.* at 185. The juror never indicated she could set aside her feelings about the defendant and be fair. *Id.* On appeal, the court held the juror's unequivocal statement established bias as a matter of law and the trial court should have granted a mistrial. *Id.*

The juror in this case made no unequivocal statement indicating bias or prejudice. Although he initially equivocated about whether his girlfriend's stepfather's relationship with the complainant might affect his evaluation of the complainant's credibility, he ultimately stated he would rely on his own opinion to judge the witness's credibility and the relationship would not influence what he did in the case. The juror stated he would handle the situation by simply not discussing his service as a juror with the stepfather. The record does not demonstrate the juror was biased as a matter of law and the record supports the trial court's implicit finding that the juror was not actually biased. *See Anderson v. State,* 633 S.W.2d 851, 853–54 (Tex.Crim.App.1982).

Because the information withheld by the juror in voir dire was not material and there was no showing Lopez was deprived of an impartial jury, the trial court did not error in denying his motion for a mistrial.

### DISABLED JUROR

 Lopez next complains the trial court erred when it failed to find the juror was disabled within the meaning of article 36.29 of the Texas Code of Criminal Procedure. However, Lopez did not raise this complaint in the trial court and therefore has waived it. *See* TEX.R.APP. P. 33.1(a).

## EXTRANEOUS OFFENSE EVIDENCE

In his final point of error, Lopez complains the trial court erred by admitting evidence of an extraneous offense. We disagree.

### *Background Facts*

The complainant sold sports merchandise and trinkets from a portable stand he set up at various locations around San Antonio. On the day he was robbed, the complainant was selling his merchandise in the parking lot of a restaurant named "Hoovers" on the near north side of town. The complainant went to the bathroom inside the restaurant, where he was confronted by Lopez and Alfonso Flores, both of whom he had known for several years. During direct examination, the complainant testified Lopez demanded he pay Lopez the $50.00 he owed Lopez. When the complainant denied owing Lopez anything and said the money he had belonged to someone else, Lopez raised his shirt and the complainant saw the handle of what he took to be a Glock pistol. The complainant testified he was scared, so he gave Lopez the $50.00 he demanded. When Flores demanded additional money "on top of" the $50.00, the complainant gave Lopez an additional $10.00. The complainant testified that although he had approximately $90.00 to $100.00 on him, he only gave Lopez the amount he demanded. After the men left, the complainant waited in the restroom for a minute or so and then went outside and saw both men drive off in separate cars. The complainant closed his stand and called his business partner to come get him. The business partner then took the complainant to a relative's house, where the complainant finally called police. He later gave a statement and identified Lopez and Flores from a police photo array.

During cross-examination, defense counsel suggested the complainant had borrowed money from Lopez several times in the past and owed Lopez money on the date of the purported robbery. Counsel's questioning emphasized the complainant's testimony that he took the entire $90.00 to $100.00 out of his pocket, yet he only gave $60.00 to Lopez, and challenged the complainant's testimony that Lopez had a gun. Counsel questioned the complainant extensively about the fact he did not immediately notify a Hoover's employee about the robbery or call police on his cell phone, and suggested the claim he had been robbed was incredible. Each time the complainant attempted to explain why he did not call police, defense counsel interrupted the complainant and objected to the answer as nonresponsive. At one point when he was challenged as to why he did not make an immediate outcry, the complainant responded that Lopez and Flores were "gang related" and he was "scared to death." Defense counsel immediately objected to the answer as "nonresponsive" and the court sustained his objection.

After asking some additional questions, defense counsel requested a bench conference and asked the court to declare a mistrial based on a motion in limine restricting any mention of gang affiliation. The State responded that the cross-examination opened the door to permit evidence of gang affiliation as well as evidence of a previous assault on the complainant by Lopez. The State argued the cross-examination called into question whether there had been a robbery at all and attempted to present the theory that Lopez was merely a creditor seeking payment of a legitimate debt. The State sought to introduce further evidence of Lopez's gang affiliation and the assault to show that Lopez was seeking to collect protection money and to rebut the defensive theory that the complainant's failure to make an immediate

outcry was evidence that no robbery had occurred. Lopez argued the evidence was "inherently prejudicial" and that the prior assault was an inadmissible extraneous offense. The court overruled the motion for a mistrial and allowed the complainant to testify on both issues.

On the State's redirect examination, the complainant testified he was selling roses downtown when he first met Lopez. Lopez and Flores, who were members of the Mexican Mafia, approached the complainant and told him that if he wanted to continue selling his merchandise, he would be required to pay Lopez a "protection fee" of $50.00 a week. Lopez and Flores visited the complainant every Friday and collected their fee. In October 2004, about seven months before the robbery at Hoover's, the complainant decided he would no longer pay the money. When Lopez confronted the complainant and he still refused to pay, Lopez beat the complainant with a crowbar, causing severe head trauma, a broken hand and the loss of six teeth. The complainant talked to the police about the beating but refused to prosecute because Lopez had told the complainant he would be killed if he "said anything."

The complainant testified he left town for awhile, and when he returned, he decided he would not work downtown anymore. The complainant began selling merchandise again in the spring of 2005. He testified he believed he did not owe the protection fee because he had taken the beating and not pressed charges and he had not heard from Lopez and Flores. The day of the robbery at Hoover's was the first time the complainant had seen Lopez since the beating.

### Applicable Law

■ Rule 404(b) of the Texas Rules of Evidence prohibits admission of crimes, wrongs, or acts extraneous to those for which a person is on trial to prove the defendant's character or that he acted in conformity with the prior misconduct. TEX.R. EVID. 404(b). However, evidence of prior misconduct is admissible if it has relevance apart from character conformity, such as to prove intent, establish motive, or rebut a defensive theory. *Moses v. State*, 105 S.W.3d 622, 626 (Tex.Crim.App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex.Crim.App.1991) (op. on reh'g). When the evidence is also objected to under Rule 403, the trial judge must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Moses*, 105 S.W.3d at 626. We review the trial court's decision to admit the evidence under an abuse of discretion standard. *Montgomery*, 810 S.W.2d at 390–92. We will uphold the trial judge's decision unless it is outside the zone of reasonable disagreement. *Id.*

### Discussion

■ Lopez sought to cast doubt upon the complainant's testimony by suggesting the complainant's version of the events did not make sense. During his cross-examination of the complainant, Lopez implied the complainant was not believable because a robber would have taken all the complainant's money, not demanded a specific sum, and a true victim of an armed robbery would have immediately reported it. The questioning suggested the complainant did not immediately report a crime or otherwise act like a victim because, in fact, no crime was committed. The cross-examination made the relationship between Lopez and the complainant, including the beating, relevant and it was necessary to explain the context within which the charged crime occurred. The evidence gave context to the demand of

only $50.00, when the complainant apparently had more money, and explained the complainant's reluctance to immediately report the crime. While the evidence was certainly prejudicial to Lopez, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. The trial judge's decision to allow the evidence was not outside the zone of reasonable disagreement. The evidence was properly admitted before the jury and we overrule this point of error.

### Conclusion

The judgment of the trial court is affirmed.