

# NUMBER 13-12-00042-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ALFREDO ARAUJO,**                                     **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                  **Appellee.**

---

### On appeal from the 75th District Court
### of Liberty County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Perkes
### Memorandum Opinion by Justice Rodriguez

Appellant Alfredo Araujo challenges his conviction for indecency with a child, a second-degree felony. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (d) (West 2011). By three issues, Araujo argues that the trial court abused its discretion in seating a juror that withheld material information during voir dire. We reverse and remand.

## I. Background[1]

Araujo was indicted for indecency with a child in connection with an incident at his restaurant in which he allegedly touched the breast of a sixteen-year-old female employee.  Araujo pleaded not guilty, and the case was tried to a jury.

During an exchange in voir dire regarding certain evidence that it would consider, the State asked veniremember Joel Evans Fingleman if he knew a person by the name of Kimberly Fingleman.  Veniremember Fingleman responded that he did not.  Later in voir dire, the State listed each of its testifying witnesses and asked the veniremembers if they knew any of the witnesses.  One of the witnesses listed by the State was Kimberly Fingleman.  None of the veniremembers stated that they knew Kimberly Fingleman, including veniremember Fingleman.  Counsel for Araujo also asked the veniremembers if they knew any of the State's witnesses, and again, none responded that they knew Kimberly Fingleman.  The State and defense then exercised their strikes, and the jury was chosen and seated; veniremember Fingleman was selected for the jury.  The trial court recessed for the day and instructed the jury to return two days later for the commencement of the guilt-innocence portion of the trial.

When the proceedings were reconvened but before opening statements and the presentation of evidence, the trial court informed the State and defense counsel that Juror Fingleman had contacted the court the day before about a possible problem.  Juror Fingleman was called to the bench and the following exchange occurred:

---

[1] This case is before the Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to a docket equalization order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[Trial court]: Good morning, sir. Mr. Fingleman, my court coordinator indicated that you had called yesterday and expressed some concerns that you on reflection understood that you had some type of marital relationship or family relationship with the alleged victim.

[Prosecutor]: Not a victim. It's a witness, a potential other victim, Judge; and her name is Kimberly Ann Fingleman. Ms. Fingleman, stand up, please. This is her here. I had her come in the courtroom for identification if you needed to talk to her or needed to have him identify her.

[Juror Fingleman]: She's married to my cousin. She worked for me in '08 and '09.

[Trial court]: What is her relationship to this case?

[Prosecutor]: Judge, she is a potential person that was molested by this man prior to this incident took place.

[Trial court]: But you have no relationship with [the victim alleged in this case]?

[Juror Fingleman]: No, sir.

[Trial court]: Okay. All right. Well, the fact that you know Ms. Fingleman, is that going to prevent you from being fair and impartial in this case, judging the evidence, and making your decision based solely on the evidence?

[Juror Fingleman]: No, sir.

[Defense counsel]: Sir, Monday when we were selecting a jury you denied any knowledge of Kim Fingleman.

[Juror Fingleman]: It didn't even dawn on me until I talked to my wife about it. She said she's married to James. I know her as Kimberly. So —

[Prosecutor]: That is her in the courtroom back there?

[Juror Fingleman]: Yes, sir.

3

[Defense counsel]: So, you would give more credence to a family member than you would a stranger, wouldn't you, sir?

[Juror Fingleman]: I guess the facts would — I mean we would have to look at the facts and see what the facts were.

[Defense counsel]: But such an allegation would probably affect you in making a fair decision because you would give more credence to a relative than you would to a nonrelative, correct, sir?

[Juror Fingleman]: No. I think the facts say for itself. I mean justice. I have to hear everything.

[Defense counsel]: Are you aware of any of these facts or allegations that you may have heard from Kimberly or anyone else regarding Kimberly?

[Juror Fingleman]: Yes, sir.

[Defense counsel]: So, therefore, you already have some knowledge of it and that knowledge may affect you in making your decision then?

[Juror Fingleman]: No. I need to see everything.

[Defense counsel]: Okay, sir; but the fact you're already aware of something that may or may not come into evidence, you can't put that out of your mind because it's still there and you know it, correct, sir?

[Juror Fingleman]: Well, sure. I mean yeah, sure.

[Defense counsel]: So, the fact that you are related to her and you know of some evidence that may or may not come into evidence in this trial, that could affect you in making your decision regarding these charges against Alfredo Araujo?

[Juror Fingleman]: No, not if it doesn't come into this trial.

[Defense counsel]: You have got something in your head. As we used to say, the skunk —

4

[Juror Fingleman]: I think you have something in your head. That's what I'm trying to say.

[Defense counsel]: The way we used to say it was the skunk is already in the courtroom and the evidence is out and once it's out you can't take it back.

[Juror Fingleman]: That's for you. So —

[Defense counsel]: But this is something that you know from discussions with her or someone else, correct, sir?

[Juror Fingleman]: Yes, sir.

[Defense counsel]: About these allegations —

[Juror Fingleman]: Yes, sir.

[Defense counsel]: — against him between him and her?

[Juror Fingleman]: Yes, sir. I have already stated that.

[Defense counsel]: The fact that you're aware of this and you did not disclose this on Monday —

[Juror Fingleman]: I wasn't aware of it at that time.

[Defense counsel]: Yes, sir; but now that you have become aware of it it could affect you in making your decision, could it not, sir?

[Juror Fingleman]: No, sir.

[Defense counsel]: You don't think it will affect you?

[Juror Fingleman]: No, sir.

[Trial court]: Mr. Fingleman is fine. Thank you, Mr. Fingleman, very much.

Defense counsel then made this objection:

We must object to the retention of Mr. Fingleman as a juror in this

5

case, Your Honor, because his answers were incorrect [during voir dire] on Monday.

Had we known his correct answers, we would have exercised a peremptory strike against Mr. Fingleman.

Now that he has come forward and told us that he is related to Ms. Fingleman who is a witness in this case though he denies it will have any effect upon him, he knows of something that may or may not come before the jury that could certainly affect his decision-making ability.

We must object to the retention of Mr. Fingleman and ask that he be excused. Had we known the correct answer to those voir dire questions on Monday, we would have certainly stricken Mr. Fingleman.

At this point in time we urge the court to excuse Mr. Fingleman and seat the alternate juror.

The trial court overruled the objection, and the trial proceeded. After the close of evidence, the jury returned a guilty verdict and sentenced Araujo to five years' imprisonment. This appeal followed.

## II. Discussion

By one of his appellate issues, Araujo argues that the trial court abused its discretion in denying his motion to dismiss Juror Fingleman and seat the alternate juror in light of Juror Fingleman's failure to disclose, during voir dire, his relationship to one of the State's witnesses and his knowledge of the facts of the case. Araujo argues that this was a material misrepresentation that prevented him from being able to exercise his peremptory strikes to remove Juror Fingleman from the panel, which violated his right to a fair and impartial jury. We agree.

The voir dire process is designed to ensure, to the fullest extent possible, that an intelligent, alert, disinterested and impartial jury will perform the duty assigned to it. *Salazar v. State*, 562 S.W.2d 480, 482 (Tex. Crim. App. 1978). Counsel for the State and defendant have the

6

right to question the jury to expose any interest or partiality in order to use peremptory strikes intelligently. *See Florio v. State*, 568 S.W.2d 132, 133 (Tex. Crim. App. 1978); *see also* TEX. CONST. art. 1 § 10 (stating that "[i]n all criminal prosecutions the accused shall have a speedy public trial *by an impartial jury*[]" (emphasis added)). Hence, when a juror withholds material information, the parties' use of challenges and peremptory strikes is hampered. *See Salazar*, 562 S.W.2d at 482.

*Franklin v. State*, 12 S.W.3d 473, 477–78 (Tex. Crim. App. 2000). Material information is that which shows a juror's bias or prejudice. *See Decker v. State*, 717 S.W.2d 903, 907 (Tex. Crim. App. 1986) (op. on reh'g). Examples of withheld information found to be material include: in a sexual assault of a child case, a juror's late disclosure that she was the victim's Girl Scout leader, *see Franklin*, 12 S.W.3d at 478–79; in an indecency with a child case, the fact that a juror had witnessed the sexual assault of his daughter and had testified against the defendant in the trial, *see Salazar*, 562 S.W.2d at 482–83; and in a murder case, a juror's late disclosure that he was well-acquainted with the victim's family. *See Von January v. State*, 576 S.W.2d 43, 45 (Tex. Crim. App. [Panel Op.] 1978).

"[T]he good faith of a juror [in failing to disclose certain information] is largely irrelevant when considering the materiality of information withheld." *Franklin*, 12 S.W.3d at 478. And "[w]hen a partial, biased, or prejudiced juror is selected without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the answers given to him on voir dire not knowing them to be inaccurate, good ground exists for a new trial." *Von January*, 576 S.W.2d at 45.

We first address whether the information withheld by Juror Fingleman was material. During questioning by the trial court, the State, and defense counsel before trial commenced, Juror Fingleman revealed that Kimberly Fingleman—one of the State's

7

witnesses and another alleged victim of Araujo—was a member of his extended family who had worked for him in the past. Juror Fingleman revealed that Kimberly had shared facts about the case against Araujo with him. In short, the record clearly shows that Juror Fingleman's relationship with Kimberly was more than a mere acquaintance. *Cf. Decker*, 717 S.W.2d at 907; *Brown v. State*, 183 S.W.3d 728, 739 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). She was a member of his family; he was her former employer; and, most importantly, she had shared intimate information with him about her connection to an alleged sexual crime. We conclude that the information withheld by Juror Fingleman was material. *See Franklin*, 12 S.W.3d at 478–79; *Von January*, 576 S.W.2d at 45; *Salazar*, 562 S.W.2d at 482–83.

We next determine whether Juror Fingleman was selected for the jury without fault or lack of diligence on the part of defense counsel. During voir dire, defense counsel specifically asked the venire whether any member knew any of the State's witnesses, one of whom was identified as Kimberly Fingleman shortly before counsel's question. No veniremember stated that he or she did. Counsel then acted in good faith on the answers given to his questions in exercising his peremptory strikes. And because Juror Fingleman did not disclose in response to counsel's questions that he knew Kimberly, he was not struck and was ultimately selected for and seated on the jury. In sum, Juror Fingleman was selected without fault or lack of diligence on the part of defense counsel, who acted in good faith upon the answers given to him during voir dire not knowing them to be inaccurate. *See Von January*, 576 S.W.2d at 45.

Araujo's complaint on appeal is that, once Juror Fingleman's disqualification was

8

discovered, he should have been excused and replaced with the alternate juror, and the trial court's failure to do so deprived Araujo of a fair and impartial jury. See TEX. CODE CRIM. PROC. ANN. art. 33.011(b) (West Supp. 2011) (providing that, before a jury renders a verdict regarding a defendant's guilt or innocence, or assesses a punishment, alternate jurors "shall replace jurors who . . . become or are found to be unable or disqualified to perform their duties or are found by the court on agreement of the parties to have good cause for not performing their duties."). One basis for disqualification under article 33.011(b) is that "the juror has a bias or prejudice in favor of or against the defendant." *See Brown v. State,* 183 S.W.3d 728, 739 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *State v. Holloway*, 886 S.W.2d 482, 484–85 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)); *see also* TEX. CODE CRIM. PROC. ANN. art. 35.16 (West 2006). The trial court's decision on whether to replace a juror with an alternate is subject to an abuse of discretion review. *Scales v. State*, 380 S.W.3d 780, 784 (Tex. Crim. App. 2012) (citation omitted). "The ruling must be upheld if it is within the zone of reasonable disagreement." *Id.*

We have already concluded that Juror Fingleman withheld material information that clearly showed possible bias and prejudice toward Araujo. The trial court's error here stems from its refusal to recognize the effect Juror Fingleman's withholding of information had on Araujo's right to intelligently use his peremptory strikes. *See Franklin*, 12 S.W.3d at 477–78. Once it became apparent that Juror Fingleman had withheld material information and that Araujo would have used one of his strikes to remove Fingleman had he known of the information during voir dire, the proper course

9

was for the trial court to remove Fingleman from the jury and seat the alternate. *See id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 33.011(b). In other words, it was outside the zone of reasonable disagreement and therefore an abuse of discretion for the trial court to disregard the withheld information and deny Araujo's motion to excuse Juror Fingleman and seat the alternate juror. *See Scales*, 380 S.W.3d at 784. Juror Fingleman's presence on the jury, despite defense counsel's diligent efforts to have him removed, violated Araujo's right to a fair and impartial jury. *See Franklin*, 12 S.W.3d at 477–78. Under the facts of this case, good grounds exist for a new trial. *See Von January*, 576 S.W.2d at 45. Araujo's appellate issue is sustained.[2]

### III. Conclusion

We reverse the judgment of the trial court and remand for a new trial.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
16th day of May, 2013.

---

[2] Araujo also argues that the trial court erred in denying his challenge for cause and makes a broad constitutional argument regarding the trial court's decision. But having disposed of Araujo's appeal under article 33.011, we need reach neither of these additional arguments. *See* TEX. R. APP. P. 47.1.