

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-23-00445-CR
_____

ERVIN JOSE OSORIO MIRANDA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 64th District Court
Castro County, Texas
Trial Court No. A4209-2205, Honorable Danah L. Zirpoli, Presiding

December 18, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Ervin Jose Osorio Miranda, appeals from his conviction for continuous sexual abuse of a child[1] and resulting thirty-year sentence of confinement. By six issues, Appellant challenges the trial court's decision to admit testimony he claims is irrelevant, to designate two witnesses as experts, to deny his motion for mistrial after a seated juror disclosed bias, and as a result of cumulative error. We affirm.

---

[1] *See* TEX. PENAL CODE § 21.02(b).

BACKGROUND

On March 8, 2022, Dimmitt teacher Julia Quintana noticed seven-year-old student, "K.G.",[2] sitting outside after recess, visibly distraught. When Quintana asked what was wrong, K.G. initially said she was scared of her uncle and afraid her cousin would get her in trouble with her father.

Quintana asked paraprofessional Carmen Lopez to walk with K.G. so she could investigate further. Upon return, an upset Lopez told Quintana, "[T]he dad is the one that's hurting her."

When Quintana pressed K.G. for details, the girl said her father "puts his thing inside me." K.G. pointed to her vaginal and anal regions. She said, "I don't know what it's called, but it's hard like a stick and it hurts."[3] Whereupon, Quintana escorted K.G. to the school counselor's office, and law enforcement was notified.

That evening, K.G. was transported to Amarillo. There, she underwent a forensic interview with Ashley Gonzales at the Bridge Children's Advocacy Center and a medical examination by sexual assault nurse Felicia Manning. Over Appellant's objection, Gonzales testified at trial K.G. had reported Appellant used his hands and mouth to touch her vagina, anus, and breasts. K.G. also said Appellant made her touch his penis and

---

[2] To protect the identity of the child, we refer to her by initials.

[3] At some point during Quintana's time with K.G., the child also denied that anyone else had hurt her. K.G. also referred to her arms hurting because her father would pin her down.

2

perform oral sex on him.[4]  She said the last time this occurred was the weekend before the March 8 outcry.  K.G. reported the abuse began when she was six.

The next morning, Appellant came voluntarily to the Dimmitt Police Department. Assistant Chief Tony Martinez advised him of his Miranda rights.  Appellant waived them by signing a written form.  After initially denying the allegations dozens of times, Appellant eventually admitted to sexually assaulting K.G. on multiple occasions.  He confessed to touching his penis against her vagina and anus, inserting his penis into her anus, and contacting her mouth with his penis.

## ANALYSIS

### A. Relevance of Outcry Testimony by Gonzales and Manning

Before trial, the State filed a notice of intent to use statements made by K.G. to Gonzales and Manning.  By his first and second issues, Appellant contends that the trial court erred by admitting their testimony because "neither witness offered anything relevant."[5]

To preserve error for appellate review, the record must show that the objection "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."  TEX. R. APP. P. 33.1(a)(1)(A); *Clark v. State*,

---

[4] According to Manning, K.G. reported similar acts to her.

[5] Appellant does not identify particular statements; rather, he appears to suggest their testimony was irrelevant *in toto*.

3

365 S.W.3d 333, 339 (Tex. Crim. App. 2012). The issue on appeal must comport with the objection made at trial. *Clark*, 365 S.W.3d at 339.

Appellant generally avers that he posed timely objections to the witnesses' relevance. He provides no record citation to any such objection.[6] Because Appellant cannot point to any objections that were properly made and improperly ruled upon, he fails to show any error by the trial court. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Clark*, 365 S.W.3d at 339. Appellant's first and second issues are overruled.

B. Expert Testimony by Gonzales and Manning

By his third and fourth issues, Appellant generally argues that Gonzales's and Manning's testimonies were improperly admitted as expert testimony "because neither witness offered anything substantive to help the trier of fact to understand the evidence or to determine a fact in issue."[7] Appellant concedes the witnesses were qualified as experts but challenges their reliability and relevance, arguing neither witness "brought anything new to the table." *See Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019) ("Three requirements must be met before expert testimony can be admitted: (1) The witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert

---

[6] During Manning's testimony, Appellant posed a single relevance objection pertaining to a question about the general properties of the hymen in the context of sexual exams. The objection was sustained.

[7] Appellant also summarily concludes the witnesses were "allowed to testify to hearsay statements of the victim, that would not otherwise have been admissible." However, Appellant's argument is devoid of any citations to the record, applicable rules of evidence, or law relating to hearsay statements by a child-complainant in a sexual abuse case. Accordingly, to the extent Appellant intended to present this as error on appeal, his argument is waived for inadequate briefing. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

4

testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case.").

At trial, Appellant lodged no reliability or relevance objection to Gonzales's testimony. During Manning's testimony, Appellant objected that testimony relating to "grooming" was outside of her expertise and was irrelevant, and the objection was sustained. However, we are directed to no portion of the record where a timely objection was made. Accordingly, the complaints in Appellant's third and fourth issues were not preserved for appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Clark*, 365 S.W.3d at 339.

Moreover, any error in admitting such testimony would be harmless in light of the substantially similar evidence admitted at trial without objection. *Cook v. State*, 665 S.W.3d 595, 600 (Tex. Crim. App. 2023) (*quoting Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (holding that any error in admitting evidence "will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.")).

Appellant's third and fourth issues are overruled.

C. Alleged Cumulative Error

By his fifth issue, Appellant argues that the cumulative effect of the trial court's erroneous rulings addressed above rendered the trial fundamentally unfair, requiring a new trial. "Though it is possible for a number of errors to cumulatively rise to the point where they become harmful, we have never found that 'non-errors may in their cumulative effect cause error.'" *Bluntson v. State,* __ S.W.3d __, No. AP-77, 2025 Tex. Crim. App. LEXIS 297, at *18 (Tex. Crim. App. May 7, 2025) (*quoting Gamboa v. State*, 296 S.W.3d

5

574, 585 (Tex. Crim. App. 2009)).  Because, as shown above, we find no error in any of the complained-of testimony, we do not find the trial court's decisions constituted cumulative error.  *See id.*  Appellant's fifth issue is overruled.

D. Denied Mistrial Due to Allegedly Biased Juror

By his sixth issue, Appellant argues the trial court erred when it denied his motion for mistrial after a seated juror disclosed bias and was replaced by an alternate before the presentation of any evidence.  We overrule the issue.

During jury selection on June 12, 2023, Appellant asked the venire whether they knew schoolteacher Quintana.  Jeremy Falcon did not raise his hand.  He was seated as Juror 8, and Brenda Reyes was named as an alternate.  Appellant pleaded not guilty to the indictment, and both sides presented brief opening statements.  No evidence was presented before trial adjourned for the day.

When trial resumed the next morning outside the jury's presence, the trial judge stated that juror Falcon had approached her and asked to speak with her.  Falcon told the court and attorneys that Quintana is his second cousin and that he could not disagree with her testimony if he believed it was incorrect: "She's family and I really can't do that to family."  Falcon indicated he had been too nervous to speak up during voir dire.[8]

Appellant's counsel moved to strike Falcon and for a mistrial.  Counsel acknowledged alternate Reyes's availability as an alternate juror, but argued that if he

---

[8] Falcon also denied speaking with any other jurors about Quintana or the case.

had known earlier of Falcon's bias, he would have challenged Falcon for cause and exercised his peremptory strikes differently. As counsel told the court:

> And while in retrospect it's difficult to determine exactly how that would be, I would point to our decision not to use a strike on Juror McLarty. There were several choices in that area of jurors; 33, 34, 35, 36 and so on. And had we known that Mr. Falcon would not be a juror, we would've exercised that strike differently, most likely on Juror McLarty and it would've affected the way in which we exercised our selection of the alternate also. And so I'd ask for a mistrial for that purpose.

The court granted the challenge to strike Falcon but denied the motion for mistrial. Reyes replaced Falcon on the jury. The trial then proceeded with the State presenting its first witness.

The Sixth Amendment guarantees the right to a trial before an impartial jury, which includes adequate voir dire to identify unqualified jurors. U.S. CONST. amend. VI; *Morgan v. Illinois*, 504 U.S. 719, 729 (1992); *Franklin v. State*, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004). "When a juror withholds material information during voir dire that the defense, using due diligence, could not uncover, the parties are denied the opportunity to exercise their challenges, which hinders their selection of an impartial jury." *State v. Gutierrez*, 541 S.W.3d 91, 100 (Tex. Crim. App. 2017).

Appellant relies on *Franklin v. State*, a case that traversed the appellate courts four times before final resolution. 986 S.W.2d 349 (Tex. App.—Texarkana 1999), *rev'd*, 12 S.W.3d 473 (Tex. Crim. App. 2000), *on remand*, 23 S.W.3d 81 (Tex. App.—Texarkana 2000), *aff'd*, 138 S.W.3d 351 (Tex. Crim. App. 2004). In that case, Spradlin remained silent when asked during voir dire whether she knew any trial participants. 23 S.W.3d at 82. After the victim took the stand, Spradlin (now a juror) disclosed that the victim was in

her daughter's Girl Scout troop. *Id.* The trial court questioned Spradlin, who stated she could be fair and impartial. *Id.* After the court sent Spradlin from the courtroom, defense counsel moved for a mistrial and requested permission to question Spradlin further, but the trial court denied both requests and denied the motion for mistrial. *Id.*

Although one opinion states the trial court then "sent [Spradlin] from the courtroom,"[9] the facts in context show that Spradlin remained a juror throughout trial. The Court of Criminal Appeals held the trial court's error in refusing additional questioning of Spradlin was harmful because it prevented the defendant from "determin[ing] the extent of prejudice that might have existed." 12 S.W.3d at 479 (relying in part on *Salazar v. State*, 562 SW.2d 480, 482 (Tex. Crim. App. 1978)).

This case presents no comparable harm. The trial court removed Falcon before any evidence was presented and replaced him with an alternate. Appellant received exactly what he would have obtained had Falcon disclosed his bias during voir dire— removal from jury service. Unlike *Franklin*, no biased juror heard any evidence.

Appellant proposes a different theory. He reasons that had he known about Falcon earlier, he would have used a *peremptory* strike against Juror *McLarty*. But Appellant makes no connection between discovering Falcon's misstatement and McLarty's service, particularly given that Appellant did not exercise a peremptory strike against Falcon; it is unclear where this additional strike would have come from. *Franklin* protects against biased jurors deliberating, not regrets over how peremptory strikes were deployed against

---

[9] 23 S.W.3d at 82.

other jurors.  The Sixth Amendment guarantees an impartial jury, not a mulligan on voir dire.

We cannot find that the trial court's denial of Appellant's motion for mistrial contributed to Appellant's conviction, punishment, or otherwise adversely affected Appellant's substantive rights.  Appellant's sixth issue is overruled.

## CONCLUSION

Having overruled all of Appellant's issues, we affirm the trial court's judgment.


Lawrence M. Doss
Justice

Do not publish.