

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00064-CR
_____

GENNARIO FERRALEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 114th Judicial District Court
Smith County, Texas
Trial Court No. 114-2145-07

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

A jury found Gennario Ferralez (the appellant) guilty of driving while intoxicated (DWI). *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003). The appellant admitted he had been twice previously, finally, and sequentially convicted of DWI. This made the appellant's current conviction a felony offense. *See* TEX. PENAL CODE ANN. § 49.09 (Vernon Supp. 2008). The appellant also admitted he had been twice previously, finally, and sequentially convicted of a felony offense. This fact thus made the appellant eligible for punishment applicable to first-degree felonies; the jury assessed the appellant's punishment at seventy-five years' imprisonment. *See* TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2008). The appellant now contends that the evidence admitted at trial against him was legally and factually insufficient to support his conviction and that the trial court erred by admitting unsolicited evidence of a prior felony DWI conviction during the guilt/innocence phase of the trial. We overrule these issues and affirm the trial court's judgment.[1]

## I.    Evidentiary Sufficiency

In his first two issues, the appellant contends the evidence is legally and factually insufficient to establish that he operated a motor vehicle while intoxicated.

A legal sufficiency review requires an appellate court to ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard mandates the reviewing court to accord deference to the fact-finder's duty to resolve conflicts in testimony and other evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This review standard requires an examination of all the evidence, both that which was properly admitted and that which was improperly admitted, to determine whether the cumulative force of all the evidence (direct, circumstantial, or both) supports the verdict when such evidence is viewed in the light most favorable to that verdict. *Id.*; *see also Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In legal sufficiency claims, it is often helpful to measure the evidence against the elements of the offense with the same kind of analysis as that applied in the test for a hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically-correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A factual sufficiency review has subtle differences. "Evidence may be factually insufficient if: '1) it is so weak as to be clearly wrong and manifestly unjust or 2) the adverse finding is against the great weight and preponderance of the available evidence.'" *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007) (quoting *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). "Such a factual sufficiency review requires the reviewing court to consider all of the evidence." *Id.*

3

(quoting *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)). "A clearly wrong and unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias." *Id.* (quoting *Sells v. State*, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003); *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)). Like the legal sufficiency review process, the hypothetically-correct jury charge construct can be employed in analyzing the factual sufficiency of the evidence. *Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008).

Our law states that a person "commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04. The term "intoxicated" means, among other things, "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body . . . ." TEX. PENAL CODE ANN. § 49.01(2)(A) (Vernon 2003). The relevant part of the indictment alleged the appellant had "operate[d] a motor vehicle in a public place while . . . intoxicated by not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into his body . . . ." The applicable hypothetically-correct jury charge would therefore require the State to bring forth proof of the following elements: that (1) the appellant, (2) operated, (3) a motor vehicle, (4) in a public place, (5) while intoxicated. With this framework in mind, we turn now to a review of the evidence admitted at trial.

4

Robert Hartman, a trooper for the Texas Department of Public Safety (DPS) since 2004, testified first.[2] Hartman told the jury that he had been on patrol the evening of August 8, 2007, in Smith County, Texas, when he stopped the appellant's motor vehicle because the vehicle had a defective stoplamp. *See* TEX. TRANSP. CODE ANN. § 547.323 (Vernon 1999). Hartman also said he witnessed Ferralez make a turn without first signaling the turn. *See* TEX. TRANSP. CODE ANN. § 545.104 (Vernon 1999). Hartman told the jury that the appellant said he had been painting a residence earlier in the day. During his roadside discussion with the appellant, Hartman reported smelling the "strong odor" of alcohol coming from the appellant's breath. The appellant later admitted to having had one beer after he had stopped working earlier in the day. He also admitted to having been spraying lacquer paint all day, which the appellant believed had made him feel "high."

Hartman asked Ferralez to perform several standardized field-sobriety tests. During the horizontal gaze nystagmus (HGN) test, Hartman reportedly observed the appellant show six of six clues, which Hartman testified was a strong indicator that the appellant was intoxicated. According to Hartman, a person fails the HGN test if he shows as few as four out of the six clues. Hartman said he believed Ferralez had more than one beer to drink on the night in question.[3]

---

[2]Hartman also told the jury that he previously worked as a deputy with the Smith County Sheriff's Department for three and a half years.

[3]Hartman reported that Ferralez did not show any vertical nystagmus. Vertical gaze nystagmus (VGN) testing results can suggest the presence of certain types or classes of illegal narcotics, and/or the presence of an extremely high level of alcohol. *See generally State v. Neesley*,

Hartman next asked the appellant to perform the walk-and-turn test. The appellant made several errors (including an inability to maintain his balance during the instruction phase) and ultimately admitted that he could not complete the test because he was high on lacquer fumes, suggesting to Hartman that the appellant had failed that field-sobriety test.[4]

Hartman then asked the appellant whether he believed it was safe for him to have been driving; the appellant responded, "No, not really."[5] Based on the interviews and the appellant's performance during the three standardized field-sobriety tests, Hartman concluded that the appellant had lost the normal use of his mental and/or physical faculties, was impaired, and that he could not safely operate a motor vehicle. The appellant was then arrested for DWI. At the jail, the appellant refused to provide a blood specimen for purposes of testing the alcohol concentration.

On cross-examination, Hartman admitted that the appellant had not been slurring his words on the night in question, that he had not stumbled or staggered as he walked, that his eyes were not glassy or bloodshot, and that he had not been weaving his car all over the road. Our review of the

---

239 S.W.3d 780, 788 & n.3 (Tex. Crim. App. 2007) (Keller, J., concurring) (observation of vertical nystagmus later confirmed by laboratory testing showing defendant had ingested cocaine and marihuana); *Burkett v. State*, 179 S.W.3d 18, 23 (Tex. App.—San Antonio 2005, no pet.) (police officer used VGN testing to look for signs of excessive alcohol consumption).

[4]The appellant was unable to perform the third test, described by the officer as the walk-and-turn test.

[5]When asked why he had not been using a respirator while spraying lacquer paint, the appellant reportedly stated that he had run out of respirator filters and therefore had to spray the lacquer without the use of protective equipment. An inventory search of the appellant's vehicle revealed a new package of respirator filters on the front seat of the appellant's vehicle.

videotape of the traffic stop confirms most of these concessions by the trooper. Hartman also stated, in response to defense counsel's questioning, that the officer observed the appellant "shaking, which is an impairment of physical ability, due to him spraying paint lacquer." We, however, could not independently observe the appellant shaking, but the quality of the videotape submitted with the appellate record was not of the highest grade.

On re-direct, Hartman told the jury that it is possible for someone who is high on something such as lacquer paint to lose the normal use of his physical and/or mental faculties. He also told the jury that not everyone he arrests for DWI has glassy or bloodshot eyes, slurred speech, or swerved all over the roadways.

Steven Hodge, another state trooper with the DPS, testified about the relevant events he witnessed on August 8, 2007. Hodge identified the appellant as being the person who was driving the vehicle stopped by Hartman. Hodge's post-arrest inventory search of the appellant's vehicle uncovered no evidence of alcoholic beverages.

Barbara Ferralez (Barbara) testified on her husband's behalf. Barbara married the appellant the month following his arrest on the current charge. She told the jury that she had spoken on the telephone with the appellant several times on the day in question; he never sounded as if he was drunk or intoxicated. On cross-examination, she admitted that he occasionally comes home "high" from lacquer and paint fumes.

Rayshell Mecaskey shared an apartment with the appellant at the time he was arrested in connection with this case.[6] She told the jury that the appellant left the apartment on the date in question around 8:45 p.m. to take "some soda and some crackers" to Barbara, who was sick. Mecaskey reported that the appellant did not appear to have been drinking or "high" on anything at the time he left. His demeanor "was just like normal every day" and she did not believe the appellant was "high" at the time. She did admit, however, that the appellant smelled strongly of paint or lacquer; she even had to open several windows to help alleviate the pungent odor that he had brought with him into their shared apartment.

After reviewing all the evidence using the appropriate appellate standards, we conclude the jury had before it both factually and legally sufficient evidence to find that (1) the appellant, (2) operated, (3) a motor vehicle, (4) in a public place, (5) while intoxicated. While it is true that there was no evidence that the appellant was weaving all over the road, had bloodshot eyes, was slurring his speech, or was stumbling over himself as he exited his vehicle on the night in question, the jury nonetheless had before it other evidence upon which it could reasonably conclude the appellant was guilty of the charged offense. This evidence included Hartman's testimony and the videotape that corroborated many facts to which the officer testified. We cannot say this appellate record leads us to conclude the jury's verdict was manifestly unjust, shocks the conscience, or demonstrates bias. Accordingly, we overrule the appellant's first and second issues.

---

[6]Mecaskey and the appellant were not romantically involved.

## II.      Admitting Evidence of the Appellant's Previous Felony DWI Conviction

In his last point of error, the appellant contends the trial court erred by admitting, during the guilt/innocence phase of trial, unsolicited evidence of his prior felony conviction for DWI. The State responds by arguing that the appellant opened the door to such questioning.

We review a trial court's decision to admit or exclude extraneous-offense evidence under an abuse of discretion standard. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). "An appellate court would misapply the appellate abuse of discretion standard of review by reversing a trial court's admissibility decision solely because the appellate court disagreed with it." *Id.* An appellate court may not conclude that the trial court abused its discretion unless the lower court's ruling fell outside the zone of reasonable disagreement. *Id.*; *see also Lopez v. State*, 261 S.W.3d 103, 110 (Tex. App.—San Antonio 2008, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 390–92 (Tex. Crim. App. 1991) (op. on reh'g)). Our Rules of Evidence prohibit the admission of extraneous-offense evidence except under certain conditions:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b).

The basis upon which the State wishes to solicit extraneous-offense evidence may not be elicited through "prompting or maneuvering" by the State during *its* cross-examination of a witness; instead, the proffered reason for the State's asserted need for the extraneous-offense evidence must find its genesis in the direct examination testimony solicited by the defense. *Wheeler v. State*, 67 S.W.3d 879, 885 & n.14 (Tex. Crim. App. 2002) (referencing *Shipman v. State*, 604 S.W.2d 182, 185 (Tex. Crim. App. 1980); *Mares v. State*, 758 S.W.2d 932, 936 (Tex. App.—El Paso 1988, pet. ref'd)).

During guilt/innocence, and over the appellant's objection, the trial court permitted the State to ask Barbara about her husband's prior felony DWI conviction. The trial court ruled that the appellant had opened the door based on the defense counsel's earlier direct examination questions of Barbara. The specific testimony upon which the trial court based its ruling was as follows:

> Q    [By Defense Counsel] Can you tell the jury about [the appellant's] drinking habits?
>
> A    [Barbara Ferralez] It's very rare on occasion. Sometimes he'll have, you know, a couple of beers or whatever, but, no, he does not drink.
>
> Q    So do you keep any kind of liquor or beer around the house?
>
> A    No, sir.
>
> Q    To the best of your knowledge, when he was living with this other person, right before he got married, did he keep beer or liquor around the house?
>
> A    No, sir.

On cross-examination, after first obtaining permission from the trial court to go into the now-at-issue

extraneous-felony conviction evidence, the following exchange occurred:

> Q     [By State] . . . According to you and your opinion and from personal knowledge of the defendant, you said that he doesn't drink and get intoxicated?
>
> A     [Barbara] No, sir.
>
> Q     No?
> Are you aware of the fact that on May 6th, 2003, he was sentenced to five years in the Texas Department of Corrections for felony DWI?
>
> A     Yes, sir.
>
> Q     And it's still your opinion that he doesn't get intoxicated and drink?
>
> A     No, sir.
>
> Q     Let me ask you this: You said that he doesn't drink, yet you have heard him intoxicated. How do you explain that?
>
> A     I didn't say that he does not drink. I said he drinks on occasion. A couple -- he might have a couple of beers on occasion after work but not to the point of intoxication, no.[7]

The State solicited similar testimony about the appellant's five-year felony DWI prison term during

cross-examination of Mecaskey after Mecaskey had earlier testified that she never saw the appellant

intoxicated and did not allow alcohol to be brought into their apartment.

---

[7]Later, the trial court denied the State's request to ask a different witness about the appellant's prior robbery conviction. The trial court concluded that the witness's testimony had opened the door to such evidence, but that court further held the probative value of such evidence was substantially outweighed by its danger of unfair prejudice. *See* TEX. R. EVID. 403. The robbery conviction was, therefore, properly excluded by the trial court from admission during guilt/innocence.

The appellant's direct examination of his wife (and later his direct examination of Mecaskey) left the jury with the impression that the appellant rarely drinks or gets intoxicated and that he is rarely even around alcoholic beverages. The State's cross-examination was arguably relevant to impeach and discredit the witnesses' characterizations of the appellant as someone who rarely drinks and never gets intoxicated. "When a witness presents a picture that the defendant is not the type of person to commit the charged offense, the prosecution may impeach that witness' testimony by cross-examining the witness concerning similar extraneous offenses." *Wheeler*, 67 S.W.3d at 885 & n.1 (referencing *McIlveen v. State*, 559 S.W.2d 815, 822 (Tex. Crim. App. 1977)). While one might reasonably characterize the State's cross-examination questions as "prompting and maneuvering" designed to open the door to this extraneous felony, one might also fairly characterize the appellant's direct examination of Barbara and Mecaskey as opening the door (even if ever so slightly) to this line of questioning. Thus, under the applicable standard of review, we must conclude no abuse of discretion has been shown. We overrule the appellant's third and final issue.[8]

## III. Conclusion

For the reasons stated, we conclude legally and factually sufficient evidence supports the trial court's judgment. We similarly hold the record before us does not demonstrate the trial court abused

---

[8]The appellant also makes the argument that the probative value of admitting the prior felony DWI conviction was substantially outweighed by its danger of unfair prejudice, in violation of Rule 403(b) of the Texas Rules of Evidence. The record before us does not show the appellant raised this issue in the trial court and thus the appellant has failed to preserve it for our review. *Cf. Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).

its discretion by admitting evidence of the appellant's prior conviction for felony DWI because, arguably, the appellant's direct examination of both Barbara and Mecaskey opened the door to such evidence. There being no other issues raised, we affirm the trial court's judgment.


Bailey C. Moseley
Justice


Date Submitted:     February 13, 2009
Date Decided:       February 25, 2009

Do Not Publish