

NUMBER 13-12-00670-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

WILLIE MICHAEL MWACHANDE,                                                  Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

**On appeal from the 372nd District Court
of Tarrant County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Perkes
Memorandum Opinion by Justice Garza**

Appellant, Willie Michael Mwachande, was convicted of sexual assault, a second-degree felony, and was sentenced to six years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.011(a)(1), (f) (West Supp. 2011). On appeal,[1] he contends that: (1) the

---

[1] This appeal was transferred from the Second Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West

trial court erred by allowing a juror to remain on the jury after he admitted to knowing one of the witnesses; (2) the trial court erred by denying his motion for mistrial based on the juror's revelation; and (3) the evidence was insufficient to support his conviction. We affirm.

## I. BACKGROUND

Sarah Johnson[2] testified that she met Mwachande at a bar in the summer of 2011.[3] She knew him as "Willie" and did not know his last name. At the time Sarah met Mwachande, he was with some friends, including a man named Luis. Sarah testified that she and Luis had since been romantically involved, but she denied ever being romantically interested in Mwachande or ever indicating such interest to Mwachande.

On the evening of November 12, 2011, Sarah attended a party at the home of her friend Cynthia in Fort Worth, Texas. At around midnight, Sarah, Cynthia, and another friend left the party to go to a sports bar. Sarah testified that she did not drink alcohol at Cynthia's house, but that she had "a couple of gin and waters" at the sports bar. Sarah testified that Cynthia and Mwachande were texting each other throughout the evening and were planning to meet up.[4] Cynthia asked Sarah if the group could meet to hang out at the apartment Sarah shared with her roommate, Amy Price. Sarah agreed.

2005).

[2] "Sarah Johnson" is a pseudonym used in the trial court record to refer to the complainant. She was addressed by her actual first name at trial. The trial court ordered her last name to be sealed, and it is redacted from the trial record. We will use the pseudonym to protect the complainant's privacy.

[3] Sarah testified at trial, which commenced on September 19, 2012, that she is twenty-three years old. However, we note that the trial court's final judgment states, with reference to sex offender registration requirements: "The age of the victim at the time of the offense was 24 Years."

[4] Sarah stated that Cynthia had previously been romantically involved with Mwachande.

2

When Sarah and her friends arrived at the apartment, Mwachande was waiting at the front gate.[5]  Sarah let him in through the gate, and the group entered the apartment. At that point, according to Sarah, "they started hanging out.  I went to the bathroom, came out, and I was tired and I didn't really feel like sitting with them.  And so I decided to go to sleep."  Sarah testified that, at about 2:40 or 3:00 a.m., she went into her bedroom, shut the door, and went to sleep in the clothes she had been wearing.  She then testified as to the next thing she remembered:

> I woke up and I—I had my pants off and there was somebody in the room on top of me.  And I didn't know who was in there and I woke up and I was really confused.  And he had my pants off and he—and he put his penis in me and he started going and I got really, like, freaked out.  I didn't know who was in there.  And he said, "No, it's okay.  It's just me, Willie."  And I was, like, "No, it's not okay," like, "you need to get off me right now."

> And so, like, he kept trying to convince me, "No, it's okay.  It's just me, Willie," and I'm, like, "No, it's not okay."  And so I kind of nudged him off a little bit and he had stopped and I was, like, freaking out.  I didn't really— you know, I was woken up by this.  And I was yelling at him that he was sick and I was, like, you know, that's not right.  And he's like—he just said it's—he's, like, "Can I at least just finish?"

Sarah confirmed that, after she had "nudged him off a little bit" and "said to stop," Mwachande stopped.  She then noticed that her clothes were on the floor next to the bed.  She demanded that Mwachande leave the apartment.  Sarah insisted that she did not give consent to have sexual intercourse with Mwachande, and she was unaware of what was happening until she woke up with Mwachande on top of her.

The following afternoon, Sarah called police to report a sexual assault.  She underwent an examination by a sexual assault nurse examiner ("SANE") on the evening of November 13, 2011.  Sarah indicated to the nurse that she had bathed and changed

---

[5] Sarah stated that Mwachande had been to her apartment once before, when he visited with Luis a few months earlier.

3

clothes since the alleged assault. The nurse found no injuries or trauma to Sarah's sexual organ and no semen was observed. The nurse testified that the examination findings were consistent with sexual assault based on the history given by the patient, but that the findings were also consistent with consensual intercourse. DNA analysis of vaginal swabs taken during the examination showed the presence of sperm; however, Mwachande was excluded as a possible source.[6]

Cynthia testified that Sarah "drank one of my beers" at the party at Cynthia's home. She believed that Sarah "had one or two [drinks] at the bar" and "like one drink" when the group returned to Sarah's apartment. According to Cynthia, about twenty or thirty minutes after the group arrived at the apartment, Sarah told everyone she was going to bed and went to her bedroom. Cynthia then fell asleep on the living room couch but was later awakened by Sarah yelling. Cynthia got up and looked around and "saw the front door slamming"; she surmised that Sarah "had just kicked Willie out of the apartment." Cynthia testified that Sarah, who was crying and clearly upset, then told Cynthia what happened.

Detective Jeremy Spann of the Fort Worth Police Department met with Sarah on November 18, 2011. Sarah did not know the last name of the person that assaulted her; however, Detective Spann was able to identify the suspect as Mwachande after inquiring at a place of business where he previously worked. The detective prepared a photo lineup and presented it to Sarah. Sarah identified Mwachande as the assailant. Detective Spann called Mwachande and asked to meet. Mwachande said he needed to speak to his attorney first; five minutes later, he called the detective back and said that

---

[6] The SANE nurse testified that Sarah reported having consensual sexual intercourse with a different partner on November 11, 2011.

4

he did not do anything wrong and that he wanted make a statement. He made an appointment to meet with the detective on November 25 at 8:00 a.m., but Mwachande did not show up and instead rescheduled for the next day at 9:00 a.m. Mwachande arrived at the police station about ninety minutes late on November 26. He then gave a recorded statement, which was entered into evidence and played for the jury at trial.

As part of his investigation, Detective Spann also contacted Sarah's roommate Amy. Amy informed the detective that a man named Jed Irvine is friends with "Willie" and might know his last name. The detective also had information that Jed spoke with Mwachande shortly after the incident. Detective Spann testified at trial that Jed stated he knew Mwachande for seven to eight years. Jed received a call from Mwachande at 5:00 a.m. on the day of the incident. According to the detective[7]:

> Jed stated that Willie was trying to justify what occurred and that he wanted to give his side of the story. Willie told Jed he went to the bathroom and when he came out into the—when he came out, the victim [Sarah] was in the hallway.

> Willie told Jed that the victim grabbed Willie by his penis and [dragged] him into her room. Willie told Jed he and the victim had sex for about three minutes. Willie told Jed the victim fell asleep for about five minutes during sex. Willie told Jed the victim woke up and forgot she had been having sex with Willie and told him to get off. Willie stated that he left then. Willie did admit to Jed that he asked her if he could finish.

In his recorded statement, Mwachande emphasized that everyone had been drinking heavily that night. At one point, he went to the bathroom and when he came out, Sarah was standing in front of him in the hallway, so he "made a move" on her . They then both went into Sarah's bedroom and started have sex, but within three minutes, Sarah asked him to stop. He later revised his story, stating that Sarah was

_____

[7] Detective Spann gave this testimony while reading from his police report to refresh his memory. Neither party objected to the testimony as hearsay or on any other grounds.

5

not, in fact, standing outside the bathroom, but rather

> she was in bed and I got in there.  That's—that's what happened. . . . I came out of the bathroom and I went into her room.  She was not standing there.  I got in the bed and I took her jeans off and started messing around with her and she told me to stop and I did.

When Detective Spann asked Mwachande how he "mess[ed] with her," Mwachande said:  "Insertion.  I stuck my penis in her vagina . . . while she was sleeping."[8]  Mwachande did not mention in his recorded statement —as he did to Jed, according to the Detective Spann's testimony—that Sarah had fallen asleep "for about five minutes" or that she "grabbed [him] by his penis and [dragged] him into her room."

After the State presented its case, the defense closed without presenting evidence.  The jury then convicted Mwachande of sexual assault and sentenced him to six years' imprisonment.  This appeal followed.

## II. DISCUSSION

### A.    Motion to Strike Juror and Motion for Mistrial

By his first issue on appeal, Mwachande argues that the trial court "committed constitutional error" by allowing a juror, who had admitted to knowing a witness, to remain on the jury.  By his second issue, Mwachande contends that the trial court erred in denying his motion for mistrial based on the juror's admission.

At the beginning of trial, just after Sarah took the stand as the first witness to be called by the State, Juror No. 20 stood up and asked to "have a word with the judge."  The trial court excused Sarah and invited the juror and both attorneys to have a discussion at the bench.  The juror—who did not raise his hand when the prosecutor previously asked at voir dire if any veniremember knew any of the people listed as

---

[8] Detective Spann asked Mwachande why he changed his story.  Mwachande replied:  "Because I'm a . . . human being that lies sometimes."

6

witnesses—informed the trial court that he knows Amy Price and Sarah's brother. The juror stated that, at least four years ago, he used to work with Amy as a server at a restaurant. He worked with her for about three or four years. He was friends with her but they were never romantically involved. He last saw her about six months ago, but before that, it had been "several, several years" since he saw her. Juror No. 20 also stated he recognized Sarah's brother, who was sitting in the courtroom, but that he doesn't know him "pretty much at all." The trial court asked Juror No. 20 whether there was anything about his knowledge of Amy or Sarah's brother that would make him unable to listen to the witnesses and judge them "based on what happens in court" and not based on the prior relationship. Juror No. 20 assured the trial court that he would be neutral. Defense counsel asked that the juror be struck and moved for a mistrial; the trial court denied both motions.

### 1. Standard of Review and Applicable Law

Article I, section 10 of the Texas Constitution guarantees the right to counsel, which includes the right of counsel to question members of the venire panel in order to intelligently exercise peremptory challenges." *Franklin v. State*, 138 S.W.3d 351, 357 (Tex. Crim. App. 2004) (*Franklin II*) (citing TEX. CONST. art. I, § 10 ("In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury.")). "Counsel for the State and defendant have the right to question the jury [at voir dire] to expose any interest or partiality in order to use peremptory strikes intelligently." *Franklin v. State*, 12 S.W.3d 473, 477 (Tex. Crim. App. 2000) (*Franklin I*)). "Hence, when a juror withholds material information, the parties' use of challenges and peremptory strikes is hampered." *Id.* at 477–78. Material information is that which shows a juror's bias or

7

prejudice. *See Decker v. State*, 717 S.W.2d 903, 907 (Tex. Crim. App.1986) (op. on reh'g). Examples of withheld information found to be material include: in a sexual assault of a child case, the fact that a juror was the victim's Girl Scout leader, *see Franklin I*, 12 S.W.3d at 478–79; in an indecency with a child case, the fact that a juror had witnessed the sexual assault of his daughter and had testified against the defendant in the trial, *see Salazar v. State*, 562 S.W.2d 480, 482–83 (Tex. Crim. App. 1978); and in a murder case, the fact that a juror was well-acquainted with the victim's family, *see Von January v. State*, 576 S.W.2d 43, 45 (Tex. Crim. App. [Panel Op.] 1978).

"When a partial, biased, or prejudiced juror is selected without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the answers given to him on voir dire not knowing them to be inaccurate, good ground exists for a new trial." *Franklin I*, 12 S.W.3d at 478 (quoting *Von January*, 576 S.W.2d at 45). "It is not necessary that the concealed information show actual bias; just that it has a tendency to show bias." *Franklin II*, 138 S.W.3d at 356.

A trial judge's ability to declare a mistrial based on manifest necessity is limited to "very extraordinary and striking circumstances." *Hill*, 90 S.W.3d at 313 (citing *United States v. Jorn*, 400 U.S. 470, 480 (1971)). Manifest necessity exists when the circumstances render it impossible to arrive at a fair verdict, when it is impossible to continue with trial, or when the verdict would be automatically reversed on appeal because of trial error. *Id.* at 315.

**2      Analysis**

With respect to Amy—who was not with Sarah on the night of the offense—the

juror's prior relationship was minimal. He worked with her for a few years, several years before trial, and he was never romantically involved with her. With respect to Sarah's brother—who was not a witness at trial—the juror apparently had no personal relationship of any significance. He stated only that he knew him by sight. As to both individuals, there was no information provided to the trial court indicating that the juror's prior knowledge would hinder his ability to perform his duties as a juror.[9] The juror's revelations do not establish actual bias or prejudice or tend to show bias or prejudice. *See Franklin II*, 138 S.W.3d at 356. Accordingly, the withheld information was not "material" so as to require Juror No. 20 to be struck or a mistrial to be declared. *See Decker*, 717 S.W.2d at 907.[10] We overrule Mwachande's first and second issues.

## B.    Evidentiary Sufficiency

### 1.    Standard of Review and Applicable Law

In reviewing the sufficiency of evidence supporting a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v.*

---

[9] Juror No. 20 assured the trial court that his prior relationship with Amy would not affect his ability to listen to witnesses and evaluate the case "based on what happens in court." However, "it is not dispositive of the issue if the juror states [the withheld information] will not affect his verdict." *Brown v. State*, 183 S.W.3d 728, 737 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Franklin v. State*, 138 S.W.3d 351, 355–56 (Tex. Crim. App. 2004) (*Franklin II*)). "The good faith of the juror is 'largely irrelevant when considering the materiality of information withheld.'" *Id.* (citing *Franklin v. State*, 12 S.W.3d 473, 478 (Tex. Crim. App. 2000) (*Franklin I*)).

[10] Mwachande also contends by his second issue that, "[a]t the very least, [he] was denied the opportunity to further develop Juror 20's potential biases and prejudices." *See Franklin II*, 138 S.W.3d at 358 (holding that "the fact that the judge would not allow Franklin to ask the juror additional questions at trial compounded the situation since he could not then affirmatively get any evidence of bias on the record"). However, the record reflects that Mwachande's trial counsel did not ask the trial court for permission to pose additional questions to the juror; nor does it appear that counsel was ever prohibited from asking the juror any questions counsel saw fit to ask. Accordingly, nothing has been preserved for review. *See* TEX. R. APP. P. 33.1.

*State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When faced with conflicting evidence, we presume that the trier of fact resolved any such conflict in favor of the prosecution, and we defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Here, a hypothetically correct jury charge would state that Mwachande is guilty of the indicted offense if he intentionally or knowingly caused the penetration of Sarah's sexual organ by any means, without Sarah's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(A). A person acts "intentionally" with respect to the result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a) (West 2011). A person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

A sexual assault is "without consent" if, among other things, "the other person has not consented and the actor knows the other person is unconscious or physically unable to resist" or if "the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring." *Id.* § 22.011(b)(3), (b)(5).

10

## 2. Analysis

By his third issue on appeal, Mwachande argues that the evidence was legally insufficient to support his conviction. In particular, he contends that "[t]he alleged injured party's testimony is highly suspect due to her level of intoxication." He notes that, "[b]y the alleged injured party's own admission, she consumed several alcoholic beverages during the course of the evening" in question. He notes also that, according to Detective Spann, Jed Irvine stated that Mwachande told him that Sarah "grabbed Willie by his penis and [dragged] him into her room." Finally, he points out that the SANE nurse testified that the findings of her examination were consistent with consensual sexual intercourse.

This issue is meritless. The SANE nurse testified that her examination results were consistent with both sexual assault and consensual sex. Evidence showed that Sarah had consumed alcohol on the evening in question; however, the jury, as exclusive judge of the credibility of witnesses, *see Barshaw v. State*, 342 S.W.3d 91, 96 (Tex. Crim. App. 2011), was free to believe her testimony that she fell asleep and woke up to discover that Mwachande was sexually assaulting her.[11] The double-hearsay statement relayed by Jed and Detective Spann, if true, would arguably support a finding that the sexual encounter was consensual; however, the jury was entitled to disbelieve that statement as well. *See id.* In any event, the evidence before the jury included Mwachande's recorded statement to Detective Spann in which he concisely stated: "I stuck my penis in her vagina . . . while she was sleeping." From that sentence alone, a

---

[11] Even if the jury believed that Sarah was extremely intoxicated, that would arguably support the jury's finding of guilt under a theory that Mwachande knew that Sarah was either unaware that the sexual assault was occurring or was unconscious or physically unable to resist. *See* TEX. PENAL CODE ANN. § 22.011(b)(3), (b)(5) (West Supp. 2011).

rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.  *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(A), (b)(3), (b)(5).

The evidence was sufficient to support the conviction.  We overrule Mwachande's third issue.

### III. CONCLUSION

The judgment of the trial court is affirmed.

DORI CONTRERAS GARZA,
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b).
Delivered and filed the
30th day of January, 2014.

12